# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TONI W. THOMAS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. CIV-07-1378-D |
| CORRECTIONS CORPORATION OF AMERICA, INC., | ) ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is the Motion for Summary Judgment [Doc. No. 14] of Defendant Corrections Corporation of America, Inc. ("CCA"). Plaintiff, who appears *pro se,* did not initially respond to the Motion; however, the Court *sua sponte* granted her an extension of time, and she filed a response. CCA then filed a reply in support of its motion.

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), alleging that CCA discriminated against her in connection with her employment. She contends that she was subjected to sexual harassment and that, after she report that harassment, CCA retaliated against her; she alleges the retaliation eventually led to her termination. CCA has moved for summary judgment on Plaintiff's claims, arguing that the undisputed material facts show she cannot prove the essential elements of those claims.

I. Summary judgment standard:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)*; Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To dispute a material fact, a plaintiff must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for her. *Id.* The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

If the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322. A defendant need not disprove the plaintiff's claim; it must only point to "a lack of evidence" on an essential element of that claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The burden then shifts to the plaintiff to go beyond the pleadings and present facts, admissible in evidence, from which a rational trier of fact could find for her; conclusory arguments are insufficient, as the facts must be supported by affidavits, deposition transcripts, or specific exhibits incorporated therein. 144 F.3d at 671-72. It is not the Court's responsibility to attempt to find evidence which could support a plaintiff's position. *Id.* at 672.

II. Application:

In this case, the parties agree that Plaintiff was employed by CCA as a Correction Officer. It is also undisputed that Plaintiff was initially employed on May 3, 2004, and was assigned to a CCA facility in Burlington, Colorado. At her request, Plaintiff was transferred to a CCA facility in Tulsa, Oklahoma on or about February 14, 2005; when that facility closed, Plaintiff then transferred to CCA's Cimarron Correctional Facility ("Cimarron") in Cushing, Oklahoma, beginning work there on July 10, 2005. Plaintiff's allegations in this case are limited to events occurring during her work at Cimarron.

It is not disputed that, on or about May 14, 2007, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"); she alleged that she was sexually harassed by her supervisor in 2005 and that, after reporting the harassment, she had been retaliated against by CCA. A copy of the May 14, 2007 Charge of Discrimination, No. 564-2007-00878 ("Charge No.1"), is submitted as CCA Exhibit 8. As incidents of retaliation, Plaintiff charged that she was given "poor" performance evaluations, despite her belief that her performance was satisfactory or better. She also charged that she had been the subject of "inaccurate accusations and lies regarding my job performance." *Id.*

In Charge No. 1, Plaintiff did not identify the supervisor who allegedly sexually harassed her, nor did she describe the conduct which she believed constituted sexual harassment. In her Complaint [Doc. No. 1] in this case, however, she alleges her charge was based on comments by her female supervisor, Sgt. Neely, in August of 2005. In her response to the summary judgment motion, Plaintiff submits as Exhibit 1 a copy of a CCA Incident Statement form completed by Plaintiff. In the statement, Plaintiff describes the August 11, 2005 incident involving Sgt. Neely. According to Plaintiff, Sgt. Neely asked Plaintiff if she was married; Plaintiff replied that she had been divorced for some time, and Sgt. Neely said she was also divorced. During the same conversation, Sgt. Neely asked Plaintiff if she would like to join her for a drink after work; Plaintiff declined, stating she did not drink. These comments occurred in a single conversation. Plaintiff identifies no other comments or conduct by Sgt. Neely or any other CCA employee that Plaintiff regards as sexually harassing, nor does she identify any other incident of a sexual nature during her employment with CCA. Plaintiff contends that she complained to CCA about Sgt. Neely's comments and that, thereafter, CCA retaliated against her.

CCA denies that it received an internal complaint from Plaintiff regarding Sgt. Neely, and it has no record of receiving the Incident Report submitted as Plaintiff's Exhibit 1. In fact, in response to Charge No. 1, CCA noted the only formal complaint submitted by Plaintiff involved her belief that she had been "harassed" by her Shift Supervisor, John Hilligoss, when he required her to perform a recount of the inmate population. *See* CCA August 16, 2007 Position Statement in Response to Plaintiff's Charge No. 1 ("Response to Charge No.1"), CCA Exhibit 16. In its Response to Charge No. 1, CCA also explained its written policy prohibiting sexual harassment, the sexual harassment training which Plaintiff and all employees are required to complete, and the internal grievance procedure for reporting sexual harassment. *Id.*

Although Plaintiff 's Charge No. 1 to the EEOC alleged she received a performance rating of "poor" after complaining about Sgt. Neely, that allegation is not supported by the evidence. The record reflects that, after Sgt. Neely's August 2005 comments, Plaintiff received three annual performance evaluations. Copies of Plaintiff's evaluations for 2005 through 2007 are submitted as CCA Exhibit 11. Plaintiff's 2005 performance evaluation rated her overall performance as "Meets Requirements," which CCA defines as "consistently dependable and competent job performance." *Id.* Plaintiff does not dispute that she received that evaluation. Furthermore, she does not dispute that, following her 2005 performance evaluation, she received a four percent merit pay increase based on her performance. Plaintiff also does not dispute that, in 2006, she was again evaluated as meeting requirements, and she received a 5.6 percent merit pay increase based on her job performance. CCA Exhibit 11. Her 2007 evaluation also rated her performance as "Meets Requirements," and it is undisputed that she received a 4.6 percent merit pay increase, beginning in July of 2007. *Id.*

It is not disputed that, on or about September 19, 2007, Plaintiff's employment was terminated. On December 5, 2007, she filed a second Charge of Discrimination with the EEOC ("Charge No. 2), alleging that her termination was in retaliation for having filed EEOC Charge No. 1. A copy of Charge No. 2 is included in CCA's Exhibit No. 8. In that charge, Plaintiff said insubordination was the reason given for her termination. The record reflects that CCA timely responded to Charge No. 2, and it denied Plaintiff's allegation that her termination was motivated by retaliation for the filing of Charge No. 1. CCA Exhibit 16, March 24, 2008 Position Statement in response to Plaintiff's EEOC Charge No. 2 ("Response to Charge No. 2"). In its Response to Charge No. 2, CCA stated that Plaintiff was terminated for insubordination and unprofessional behavior toward coworkers and inmates; it documented several September 2007 incidents which led to her termination. *Id.,* pp. 3-4.

The record reflects that the EEOC investigated both charges of discrimination filed by Plaintiff. In an August 21, 2007 Pre-Determination Letter regarding Charge No. 1, the EEOC stated that, after reviewing the evidence, it had determined "it is unlikely the agency will be able to establish that a violation of the statute has occurred," and recommended dismissal of the Charge. A copy of the EEOC August 21, 2007 letter is submitted as an unmarked exhibit to CCA's reply brief. In its Response to Charge No. 2, the EEOC stated in its August 28, 2008 determination that "there is no evidence that establishes you were discriminated against due to Retaliation for filing a previous EEOC Charge." August 28, 2008 EEOC decision, attached to CCA reply brief.[1]

---

[1]The EEOC determinations are directly contrary to Plaintiff's contention at page 2 of her response brief, that the EEOC investigation "confirmed" her allegations of discrimination. However, the EEOC's determinations are not binding on this Court. *See Simms v. Oklahoma*, 165 F.3d 1321, 1331 (10th Cir. 1999), *cert. denied*, 528 U. S. 815 (1999) ( a favorable EEOC decision does not support the existence of material factual disputes precluding summary judgment when the entire record before the Court fails to establish a genuine factual dispute); *Dickerson v. Metropolitan Dade County,* 659 F.2d 574, 579 (5th Cir. 1981)(a prior EEOC determination is not binding on the trial

Consistent with established EEOC procedure, Plaintiff was given a notice of right to sue following the EEOC's unfavorable decisions on her charges of discrimination. She then filed this lawsuit.

In its motion, CCA construes Plaintiff's Complaint as asserting both a hostile work environment claim based on sexual harassment and a retaliation claim. CCA argues that the undisputed material facts establish that Plaintiff cannot satisfy her *prima facie* burden as to either claim. Although Plaintiff's allegations appear to the Court to focus on retaliation rather than a hostile environment, the Court will construe the Complaint liberally in Plaintiff's favor and address both issues.

III. Standard of proof governing Title VII claims:

Plaintiff's Title VII claims of sexual harassment and retaliation are governed by the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). According to this analysis, a Title VII plaintiff must initially establish a *prima facie* case; if she does so, the burden shifts to the defendant to present a justifiable, non-discriminatory reason for its conduct. *Id.* If the defendant presents such a reason, then the burden shifts back to the plaintiff, who must show that the proffered justification for the defendant's action is a mere pretext for unlawful employment discrimination. *McDonnell Douglas*, 411 U.S. at 804. Construing the record most liberally in Plaintiff's favor, the Court will consider Plaintiff's claims according to this analysis to determine whether Plaintiff has presented sufficient evidence to create a material factual dispute.

A. Essential elements of a Title VII hostile environment claim:

To establish a *prima facie* case based on a hostile environment resulting from sexual

---

court).

harassment, Plaintiff must prove that: 1) she was subjected to unwelcome harassment, including verbal or physical conduct of a sexual nature; 2) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment; and 3) her employer knew or should have known of the harassment and failed to take prompt remedial action. *Meritor Savings Bank, F.S.B. v. Vinson*, 477 U.S. 57, 66 (1986).

To overcome summary judgment on a hostile environment claim, plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Penry v. Federal Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir.1998) (quoting *Davis v. United States Postal Serv.,* 142 F.3d 1334, 1341 (10th Cir.1998), *cert. denied*, 526 U.S. 1039 (1999)). The Court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir. 1998)( quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)). Generally, the question is "whether the quantity, frequency, and severity of the racial, ethnic, or sexist slurs create a work environment so hostile as to discriminate against the minority employee." *Trujillo*, 157 F. 3d at 1214. Plaintiff must not only show that she subjectively perceived the environment as hostile or abusive, but that her perception was objectively reasonable. *O'Shea v. Yellow Technology Servs., Inc*., 185 F. 3d 1093, 1097 (10th Cir. 1999); *Davis*, 142 F. 3d at 1341.

In this case, construing all facts most liberally in Plaintiff's favor, the only alleged incident which could arguably involve sexual harassment is Sgt. Neely's August 2005 conversation with

7

Plaintiff. As explained, *supra*, Plaintiff contends that, on one occasion, Sgt. Neely inquired about Plaintiff's marital status and asked Plaintiff to join her for drinks after work. Because both Plaintiff and Sgt. Neely are female, Plaintiff s allegation must be analyzed in the context of a claim alleging same-sex harassment. Such harassment may be actionable under Title VII. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *Medina* v. *Income Support Division,* 413 F.3d 1131 (l0th Cir.2005); *Dick v. Phone Directories Co., Inc.,* 397 F.3d 1256 (l0th Cir.2005).

In *Medina,* the Tenth Circuit noted that the Supreme Court in *Oncale* "discussed three evidentiary routes under which a plaintiff in a same-sex sexual harassment suit might prove that she was discriminated against because of her sex." *Medina,* 413 F.3d at 1134. First, "she can establish that her harasser's discriminatory conduct was motivated by sexual desire." *Id.* (citing *Dick,* 397 F.3d at 1263). According to the Tenth Circuit, "[o]ne way to do this is to put forth evidence that her harasser is homosexual and that she proposed sexual activity with the plaintiff." *Dick,* 397 F. 3d at 1265. Second, "a plaintiff might prove that she was harassed because of her sex if she demonstrates that the harasser's conduct was motivated by hostility to the presence of that sex in the workplace." *Id.* at 1264. Next, a plaintiff may produce comparative evidence showing that her harasser treated women and men differently in a mixed-sex work environment. *Medina*, 413 F. 3d at 1135 (citing *Dick*, 397 F.3d at 1264 and *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1096 (10th Cir. 2005)). In *Medina*, the Tenth Circuit also recognized a fourth evidentiary basis for a same-sex harassment claim, noting that a plaintiff could satisfy her burden by "showing that the harasser was acting to punish the plaintiff's noncompliance with gender stereotypes." *Medina*, 413 F.3d at 1135 (citing *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257 (3d Cir. 2001)).

In this case, there is no evidence that Plaintiff contends the alleged sexual harassment by Sgt.

8

Neely was based on anything other than a perceived homosexual overture. Construing her allegations and the evidence most liberally, Plaintiff does not assert any argument or offer any evidence that could satisfy any of the other potential evidentiary bases for a same-sex harassment claim.

The mere fact that Sgt. Neely asked Plaintiff about her marital status and invited her to join her for a drink does not, as a matter of law, constitute evidence that Sgt. Neely made a homosexual overture to Plaintiff. A reasonable jury could not reach that conclusion. Furthermore, even if viewed as a form of sexual harassment, the single incident on which Plaintiff relies is not sufficiently severe to alter the conditions of her employment and create an abusive working environment, as is required to support a harassment claim under *Meritor Savings Bank, F.S.B. v. Vinson,* 477 U.S. 57 (1986). Nor was Sgt. Neely's conduct pervasive; it was limited to one occasion. Even if Plaintiff perceived Sgt. Neely's comments as sexually harassing, she must show that her perception was objectively reasonable; thus, she must show that a reasonable person in her position would have felt sexually harassed. *O'Shea*, 185 F.3d at 1097. The Court concludes that no reasonable jury could reach that conclusion according to the facts of this case.

In any event, to satisfy her *prima facie* burden on this claim, Plaintiff must also present evidence to show that the alleged harassment by Sgt. Neely unreasonably interfered with Plaintiff's job performance. Plaintiff offers no evidence to support this element of her claim. She offers no evidence to show that Sgt. Neely was involved in any way in the decision to terminate Plaintiff; she offers no evidence that Sgt. Neely took any action that a reasonable person would view as adverse.

Assuming Plaintiff's Complaint seeks to assert a claim of unlawful sexual harassment based on Sgt. Neely's conduct, the Court concludes that the undisputed material facts in the record

establish Plaintiff cannot, as a matter of law, prevail on that claim. CCA's Motion for Summary Judgment is GRANTED as to this claim.

B. Essential elements of Title VII retaliation claim:

To satisfy her *prima facie* burden on her claim of retaliation for having exercised rights pursuant to Title VII, Plaintiff must show that 1) she engaged in protected opposition to discrimination; 2) her employer subsequently took action that a reasonable employee would have found materially adverse; and 3) there is a causal connection between her protected activity and the adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006); *Argo v. Blue Cross and Blue Shield of Kansas*, 452 F.3d 1193, 1202 (10th Cir. 2006); *Metzler v. Federal Home Loan Bank of Topeka,* 464 F.3d 1164, 1171 (10th Cir. 2006).

The record establishes that the initial element of Plaintiff's *prima facie* case is satisfied because it is undisputed that Plaintiff filed an EEOC Charge of Discrimination in 2007; accordingly, the initial element of her claim is established. Plaintiff's allegations could also be construed as contending she exercised Title VII rights by allegedly complaining about Sgt. Neely's 2005 purported sexual harassment, as Title VII protected activity may consist of "complaining informally to supervisors." *Medina v. Income Support Division,* 413 F. 3d 1131, 1135-36 (10th Cir. 2005); *Hertz v. Luzenac America*, *Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). Thus, Plaintiff has satisfied the first element of a *prima facie* case of retaliation.

CCA contends that, even though Plaintiff exercised a Title VII protected right, it is entitled to judgment on this claim because Plaintiff cannot establish that she suffered an adverse employment action as a result of any complaint she may have made in 2005 or as a result of the filing of EEOC Charge No. 1. Although Plaintiff was terminated several months after she filed that charge, CCA

also contends she cannot establish the necessary causal connection between her protected activity and her termination.

To establish the second essential element of her *prima facie* claim of retaliation, Plaintiff must show that CCA took an action which a reasonable employee would have regarded as materially adverse. An adverse action does not include circumstances involving "'a mere inconvenience or an alteration of job responsibilities.'" *Wells v. Colorado Dept. of Transportation*, 325 F. 3d 1205, 1213 (10th Cir. 2003) (quoting *Heno v. Sprint/United Mgmt. Co.*, 208 F. 3d 847, 857 (10th Cir. 2000)). Examples of materially adverse actions recognized by the Tenth Circuit as sufficient for this element include "firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (citing *Acquilino v. Univ. of Kansas*, 268 F.3d 930, 934 (10th Cir. 2001).

However, the Supreme Court has recently held that materially adverse actions are not limited to "ultimate employment decisions." *Burlington Northern*, 548 U.S. at 67. "The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm;" the law is designed to cover conduct which could dissuade "a reasonable worker from making or supporting a charge of discrimination." *Id.* at 67-68. Thus, a plaintiff may establish a materially adverse action by presenting evidence that she has suffered "injury or harm" as a result of her exercise of Title VII rights. *Burlington Northern*, 548 U.S. at 67. The Court emphasized, however, that the requisite adversity must be material: "We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth 'a general civility code for the American workplace.'" *Id.* at 68 (quoting *Oncale*, 523 U.S. at 80) (emphasis in original). Thus, "[a]n employee's decision to report discriminatory behavior

cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

Assuming, for purposes of this motion, that Plaintiff complained in August 2005 that Sgt. Neely sexually harassed her, the material undisputed facts in the record show that, from that date up to her September 2007 termination, Plaintiff suffered no consequence which a reasonable employee could regard as materially adverse.

Plaintiff's only contention of adverse action prior to her termination involve disagreements with other CCA Corrections Officers. The record reflects she complained in November of 2005 that her Shift Supervisor, John Hilligoss, required Plaintiff to conduct a recount of the inmates during her shift; Plaintiff regarded this as unfair and "harassing" and claimed she was not at fault. According to the evidence before the Court, Shift Supervisor John Hilligoss noted the error in the inmate count, and he directed Sgt. Neely to have Plaintiff conduct a recount; according to the report prepared by Hilligoss, Sgt. Neely reported that Plaintiff denied the error and refused to correct the count. *See* October 30, 2005 Problem Solving Notice, CCA Exhibit 9. Hilligoss then talked to Plaintiff, and reported that she denied the error, became very angry, and said she believed she was being harassed by Hilligoss; Hilligoss then met with Plaintiff and Assistant Warden Watkins. *Id.* Plaintiff denies that she was angry or that she shouted, and she believes she was treated unfairly because she received a reprimand. However, there is no evidence that this incident impacted her work performance; in fact, she received a favorable annual performance evaluation and salary increase after it occurred. The record contains no other evidence of any incident prior to Plaintiff's

termination which could arguably be viewed as materially adverse.[2]

Of course, Plaintiff's September 19, 2007 termination qualifies as an adverse employment action. To satisfy her *prima facie* burden that her termination was the result of retaliation for the exercise of Title VII rights, however, Plaintiff must present evidence to show a causal connection between the exercise of her Title VII rights and her termination.

Although the required causal connection can be shown by circumstantial evidence, there must be a close temporal proximity between the protected action and the adverse employment event to support an inference of retaliatory motive. *Candelaria v. EG & G Energy Measurements, Inc.,* 33 F.3d 1259, 1261-62 (10th Cir. 1994); *Burrus v. United Telephone Co. of Kansas, Inc.,* 683 F.2d 339, 343 (10th Cir. 1982), *cert. denied,* 459 U.S. 1071(1982). In this case, it is undisputed that there is a two-year time period between Plaintiff's alleged 2005 internal complaint about Sgt. Neely and Plaintiff's termination; the time period between the filing of her first EEOC charge and her termination is approximately four months. The Tenth Circuit has held that a period of more than three months, without more, is insufficient to establish causation. *Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997). The lack of temporal proximity does not, however, necessarily defeat causation. *Anderson v. Coors Brewing Company*, 181 F.3d 1171, 1179 (10th Cir. 1999). Furthermore, even a showing of temporal proximity, without more, is insufficient to establish causation. *Hennagir v. Utah Dept. of Corrections*, 587 F.3d 1255, 1266 (10th Cir. 2009). Plaintiff must offer additional evidence to support causation. *Id.*

---

[2] In her response brief, Plaintiff claims for the first time that her continual requests for new uniforms were refused, and she notes a supervisor told her she needed to improve her appearance. Plaintiff contends, however, that she began requesting new uniforms when she first arrived at Cimarron; she offers no argument or evidence that would connect the refusal to provide new uniforms to her complaint about Sgt. Neely. In fact, she continued to receive favorable annual job performance evaluations and merit increases despite any comment about her appearance.

The record establishes that Plaintiff has submitted no evidence sufficient to create a material factual dispute on the issue of causation. The documents reflecting the reasons for her termination contain no reference to the incident involving Sgt. Neely, and no reference to Plaintiff's prior EEOC charge. CCA Exhibit 14. The Court concludes that, construing all evidence most liberally in favor of Plaintiff, she has failed to present evidence sufficient to satisfy her *prima facie* burden on the claim of retaliation in violation of Title VII.

Even if Plaintiff had established her *prima facie* case, however, CCA has satisfied its burden of presenting a justifiable, nondiscriminatory reason for terminating Plaintiff. The defendant's burden of establishing a legitimate, nondiscriminatory reason for its employment action is "exceedingly light." *Montes v. Vail Clinic, Inc.*, 497 F. 3d 1160, 1173 (10th Cir. 2007). If a legitimate reason is presented, then the burden shifts to the plaintiff to show "there is a genuine issue of material fact regarding whether the ...justification was pretextual." *Id.* (citing *Young v. Dillon Companies, Inc.*, 468 F. 3d 1243, 1249 (10th Cir. 2006). To show that the proffered reason is a mere pretext for discrimination, a plaintiff must show that the reason is "'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief.'" *Montes*, 497 F.3d at 1173 (quoting *Young*, 468 F.3d at 1249).

In this case, CCA offers evidence documenting the incidents which led to Plaintiff's termination. CCA Exhibit 14. In summary, she was terminated after she refused to confer with supervisors after a female coworker complained that Plaintiff had been verbally abusive to the coworker and an inmate. Plaintiff and her coworker were directed to attend a conference to discuss the altercation about which her coworker had complained; when Plaintiff arrived, she began shouting at the supervisor and refused to participate in the conference. *Id.* The Shift Supervisor

asked her to leave the premises because he believed her behavior was disruptive; she refused to do so and, when the supervisor attempted to confer with her by telephone, she hung up on him. The incident was investigated, and all witnesses reported that Plaintiff was shouting and that she refused to obey the orders of her supervisors; they also reported that attempts to calm her were unsuccessful. Plaintiff also warned Assistant Shift Supervisor Hunsucker that she would report him to the Warden. According to CCA policies and regulations, refusal to cooperate in an official investigation and refusal to obey a supervisor's orders are both violations of policies. It is not disputed that Plaintiff was aware of these policies, and she participated in training sessions regarding the same.

CCA's documentation of these incidents reflects that the incidents were thoroughly investigated and that the decision to terminate Plaintiff was made only after it was determined that she had, in fact, violated policies and was guilty of insubordination. Furthermore, CCA submits evidence establishing that a violation of these policies is grounds for termination; its evidence includes a log of employee disciplinary actions, including termination, for 2007. CCA Exhibit 15. That evidence shows that two other employees were terminated for insubordination, while a total of six were terminated for violating CCA policies. *Id.*

Although Plaintiff disagrees with the decision to terminate her, she offers no evidence to suggest that CCA's stated reason for the termination is a mere pretext for discrimination or retaliation. There is no evidence to show that the reasons given by CCA are "incoherent, weak, inconsistent, or contradictory," or that a factfinder could otherwise conclude that the reasons "were unworthy of belief." *Montes*, 497 F.3d at 1173. Plaintiff cannot satisfy her burden of showing pretext. Accordingly, CCA's motion for summary judgment is GRANTED on Plaintiff's retaliation claim.

IV. Conclusion:

For the foregoing reasons, Defendant CCA's Motion for Summary Judgment [Doc. No. 14] is GRANTED in all respects. Judgment shall enter in favor of Defendant CCA and against Plaintiff on all claims asserted by Plaintiff in this action.

IT IS SO ORDERED this 11th day of February, 2010.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE